**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PAULA SIMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:16-cv-00417 |
| | § | |
| AMERICA'S FAMILY DENTAL LLP. | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER
ON MOTION FOR SUMMARY JUDGMENT**

On May 18, 2016, the parties consented to proceed before a United States magistrate judge

for all purposes, including the entry of a final judgment under 28 U.S.C. § 636(c). (Docket Entry

#11). The case was then transferred to this court. In this action, Plaintiff Paula Sims ("Plaintiff,"

"Sims") brings claims against her former employer, Defendant America's Family Dental LLP

("Defendant," "AFD," "the company"), under Title VII of the Civil Rights Act of 1964 ["Title VII"],

as amended by the Pregnancy Discrimination Act of 1978 ["PDA"].[1] Plaintiff alleges that AFD

discriminated against her, on the basis of her sex and pregnancy, by "demoting" her, and,

subsequently, terminating her employment. Pending before the court is a motion for summary

judgment that was filed by Defendant. (Defendant's Motion for Summary Judgment ["Motion"],

Docket Entry #21). Responses and replies have been filed, as well. (Plaintiff's Response to

Defendant America's Family Dental LLP's Motion for Summary Judgment ["Response"], Docket

Entry #24; Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment

["Reply"], Docket Entry #27; Plaintiff's Surreply to Defendants for Their Motion for Summary

---

[1]42 U.S.C. § 2000e(k).

Judgment ["Surreply"], Docket Entry #28). Having reviewed the pleadings, the evidence, and the applicable law, it is **ORDERED** that Defendant's motion for summary judgment is **DENIED**.

**Background**

Defendant America's Family Dental LLP maintains dental offices in Tomball, Texas, and Spring, Texas. (Motion at 1; Motion at Exhibit ["Ex."] 1 ["Gosnell Decl."], 2; Response at Ex. 6, 1-3). Dr. Josh Gosnell ["Dr. Gosnell"] is a partner in AFD, and treats patients at the Tomball office. (Notice of Removal at Ex. C ["Original Petition"], 3, Docket Entry #1; *See* Response at Ex. 12 ["Wilkerson Affidavit"], 1). Plaintiff Paula Sims worked for AFD, from December 19, 2008, until November 12, 2012, when she was terminated. (Original Petition at 3,4; Gosnell Decl. at 2; Response at 5). Sims was assigned to work at both AFD offices, and this action arises from her complaints that Defendant discriminated against her, because of her sex and pregnancy, while she was employed. (Original Petition at 2-4; Motion at 1; *See* Motion at Ex. 2 ["Sims Depo."], 9). Plaintiff contends, specifically, that she was "demoted" from the position of "registered dental assistant" to that of "hygiene assistant [sic][,]" due to her pregnancy. (Original Petition at 3). She also alleges that Dr. Gosnell made repeated pejorative comments and jokes related to her pregnancy. (*See id.* at 3-4; Motion at Ex. 7 ["EEOC Charge"], 3; Sims Decl. at 2). Sims insists that the termination of her employment with AFD resulted from this unlawful discrimination. (*Id*. at 5).

As a dental assistant, Plaintiff's duties included administrative work, such as taking patient notes and preparing patient charts; administering sealant to patients' teeth; and assisting in AFD dental procedures by providing suction, making temporary restoration materials, and removing sutures. (Response at 12; Sims Depo. at 27:10-28:11). Sims was also sometimes required to administer nitrous oxide to sedate patients. (Gosnell Decl. at 2; Wilkerson Affidavit at 2). In late

May, 2012, Plaintiff was promoted, and began working as a "registered dental head." (Original Petition at 3; Sims Depo. at 74:17-25). It is unclear whether Sims assumed any additional duties along with her new position, but she was given an annual raise of $4,000. (*See* Original Petition at 3).

In June, 2012, Plaintiff informed Dr. Gosnell that she was pregnant. (Motion at 4; Response at 5; Sims Depo at 74: 22-25; Original Petition at 3; Gosnell Decl. at 3). Sims alleges that Dr. Gosnell became "angry" at this news, and asked her "why [she] would [have another child[.]" (Response at Ex. 11 ["Sims Decl."], 1). Plaintiff alleges further that he said that he did not know if he should fire her,[2] and that he must consult with Kasie Wilkerson ["Wilkerson"], another dental assistant at AFD, to determine "what to do with her." (Original Petition at 3). Sims claims that, after this conversation, Dr. Gosnell began to make disparaging comments related to her pregnancy. (*Id*.). She contends that he told patients and other AFD employees that she was "pregnant, and that he was going to fire her." (*Id*.). She also alleges that "almost every day[,]" he told her, explicitly, that he was going to fire her, because she was pregnant. (*Id*. at 4; Sims Depo at 78:9-10). Sims claims further that Dr. Gosnell would ask female job applicants if they were "pregnant, sterile, or wearing a chastity belt[,]" and that he would blame any office mistakes on her pregnancy. (Original Petition at 3). She acknowledges, however, that some of Dr. Gosnell's comments seemed to have been made in jest. (*Id*.).

On June 6, 2012, Plaintiff met with Dr. Gosnell and Reba Rodano ["Rodano"], a manager at AFD. (Original Petition at 3). At that time, she was informed that she would immediately begin working as a hygienist assistant, but that her wages would not change, and that the job reassignment

---

[2]Sims stated that, two days before she informed Dr. Gosnell of her pregnancy, he told the staff that he was going to fire the next woman who became pregnant. (Sims Decl. at 1).

was temporary. (Original Petition at 3; Gosnell Decl. at 5). Dr. Gosnell reportedly told her that she was reassigned to minimize her exposure to nitrous oxide, as hygienist assistants at AFD rarely work with nitrous oxide. (Gosnell Decl. at 3). Indeed, he testified that, although nitrous oxide is "frequently used during dental procedures to relieve anxiety and pain[,]" a pregnant woman who is exposed to the gas may increase her risk of miscarriage. (Motion at 4; Gosnell Decl. at 3). Plaintiff viewed this change as a demotion, and alleges that other women who became pregnant "worked in [another] room[,] instead of [] in the room where nitrous [oxide] was being utilized." (Sims Decl. at 2).

Kasie Wilkerson testified that, on a typical day, AFD performed dental services for ten to fifteen patients at its Tomball office. (Wilkerson Affidavit at 2). She estimated that, of that number, only two patients might require nitrous oxide. (*Id.*). Neither Sims nor Wilkerson could recall a time when nitrous oxide had been used on more than one patient at a time. (Sims Decl. at 2; Wilkerson Affidavit at 2). Wilkerson further testified that she could have "eas[ily] [] handle[d] all of the [] patients [who required nitrous oxide sedation,] and [allow Plaintiff] to handle the patients [who did] not [require treatment with] nitrous [oxide]." (Wilkerson Affidavit at 2). Sims said that she "d[id] n[o]t think" that Defendant had filled her dental assistant position, but she could not recall how it was able to treat all of its patients who needed sedation, without doing so. (Sims Depo. at 101:12-24).

After her "demotion," Sims worked as an assistant to Deanna Otts ["Otts"], a dental hygienist at AFD. (Motion at 6). Otts testified that Plaintiff spoke openly about her disapproval of Dr. Gosnell, as well as the office operations, and the condition of the equipment. (Motion at Ex. 3 ["Otts Affidavit"], 2). Otts also claims that she overheard Sims complaining to patients about aspects

of AFD's human resource policy, including its employee bonus distribution practices, lunch breaks, and work hour requirements. (*Id*.). She stated that, in November, 2012, she spoke with Rodano, as well as with Dr. Gosnell, about Sims' negative comments. (Otts Affidavit at 2; Motion at Ex. 4 ["Rodano Affidavit"], 2). Rodano testified that, after she received multiple complaints about Plaintiff's caustic remarks, she advised Sims to temper her attitude. (Rodano Affidavit at 3). Sims, on the other hand, denies speaking poorly about the company, its dentists, or its office equipment. (Sims Depo. at 71:7-10). She testified that she had never been counseled about her "negative" attitude or critical comments that she had allegedly made about the company. (*Id*. at 71:14-19; Rodano Affidavit at 3).

Nevertheless, Plaintiff was terminated on November 12, 2012, ostensibly, "because of critical comments that she had made in the presence of patients about Dr. Gosnell, [the company], and [its] equipment." (Rodando Affidavit at 3). Rodano stated, expressly, that Plaintiff was not terminated due to her pregnancy or sex. (*Id*.). Plaintiff maintains that she was not given a reason for her termination, but she insists that her sex and pregnancy were motivating factors in her discharge. (Original Petition at 5; Sims Decl. at 2).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2012. (Original Petition at 4; EEOC Charge at 2). In that charge, Sims alleged that AFD discriminated against her on the basis of her sex. (*Id*.). Before this court, she contends that she was "demoted," because of her pregnancy. Plaintiff also claims that Dr. Gosnell made disparaging statements about her, due to her sex and her pregnancy. (*Id.*). Sims received a right to sue letter from the EEOC on October 21, 2015, but she has not submitted a copy

of that letter.[3] (Original Petition at 4). She filed an action against Defendant in state court on January 6, 2016. (*Id.*). In her state court petition, Sims made claims for sex and pregnancy discrimination and wrongful termination, in violation of Title VII of the Civil Rights Act. (*Id.* at 4-5). On February 17, 2016, Defendant removed this action to federal court on the basis of the court's federal question jurisdiction. (Notice of Removal at 1, Docket Entry #1).

Defendant now moves for summary judgment. In support of its motion, AFD contends, first, that Sims cannot prove a *prima facie* case of pregnancy discrimination, based on her transfer to the position of dental hygienist assistant. (*Id.* at 11-13). In support of its argument, AFD claims that Plaintiff was not qualified for her previous position, because she could not perform all of its essential functions. (*Id.* at 11-12). Defendant also asserts that the reassignment was not an adverse employment action, and, so it cannot support a claim for discrimination. (*Id.* at 13). Next, the company argues that Sims cannot establish a *prima facie* case of sex discrimination, because she cannot identify any valid male comparators to substantiate her claims. (Motion at 11). Defendant argues further that Plaintiff has no evidence that she has been replaced by, or treated less favorably than, a similarly situated employee, outside of her protected class. (*Id.*). In the alternative, AFD contends that it had legitimate, nondiscriminatory reasons for transferring Sims, and that she has not produced substantial evidence to show that those reasons were a pretext for discrimination. (*Id.* at 14-16).

As to the claim for wrongful termination, Defendant, likewise, argues that Plaintiff cannot establish that she has been replaced by, or treated less favorably than, a similarly situated employee, outside of her protected class. (*Id.* at 16-17). In the alternative, AFD claims that it had legitimate,

---

[3]Defendant, however, has not raised lack of jurisdiction based on Plaintiff's failure to submit a right to sue letter as grounds for dismissal.

non-discriminatory reasons for terminating her employment. (*Id*. at 17-18). Finally, Defendant contends that Plaintiff has produced no evidence of a pretext for discrimination. (*Id*. at 18-20). In fact, AFD is adamant that the record is replete with evidence that no discrimination occurred. (*Id*.). Having reviewed the pleadings, the evidence, and the applicable law, it is ordered that Defendant's motion for summary judgment is denied.

**Standard of Review**

Summary judgment is appropriate if "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant [is] entitled to judgment as a matter of law.'" *Pustejovsky v. Pliva, Inc*., 623 F.3d 271, 275-76 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(c); citing *Breaux v. Halliburton Energy Servs*., 562 F.3d 358, 364 (5th Cir. 2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving part[ies], there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 30, 127 S.Ct. 1769, 167 L.Ed. 686 (2007) (citations omitted); *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012). Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). "The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case." *Mack v. Equable Ascent Financial, L.L.C.,* 748 F.3d 663, 665 (S.D. Tex. 2014) (citations omitted); *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005). "'If the moving party fails to meet its initial burden, its motion for summary

judgment must be denied, regardless of the non-movant['s] response.'" *Exxon Mobil Corp. v. U.S.*, Nos. H-10-2386, H-11-1814, 2015 WL 3513949, *at 15 (S.D. Tex. June 4, 2015) (quoting *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002). If the moving party its met its Rule 56 burden, the non-moving party cannot merely rest on the allegations in her pleadings. *See Lincoln*, 401 F.3d at 349-50; *see also Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001). Rather, she is required to "'go beyond the pleadings'" and produce probative evidence to show "'that there is a genuine issue for trial.'" *Kee*, 247 F.3d at 210 (citations omitted); *Boudreaux*, 402 F.3d at 540; *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005). If she does so, her evidence "is to be believed, and all justifiable inferences are to be drawn in her favor." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir. 2003); *see Hillman,* 697 F.3d at 302. However, if the non-movant fails to respond appropriately, or if she fails to respond at all, summary judgment is not awarded to the moving party simply by default. *See Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *see also Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014). Instead, as always, summary judgment is appropriate only if the moving party has demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *Day,* 768 F.3d at 435.

**Discussion**

### Claims Under Title VII

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination by employers "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). The Pregnancy Discrimination Act of 1978 ["PDA"] "amended Title VII by explicitly

including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination." *Gerdin v. CEVA Freight, L.L.C.,* 908 F.Supp. 2d. 821, 826 (S.D. Tex. 2012) *(quoting Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002)). In doing so, Title VII's definition of the terms "because of sex" and "on the basis of sex" was expanded to include "because of or on the basis of pregnancy, childbirth, or related medical conditions. . ." *Id*. (quoting 42 U.S.C. § 2000e(k)). A claim brought under the PDA is analyzed like any other Title VII discrimination claim. *Gerdin*, 908 F.Supp. 2d at 826.

A discrimination claim under Title VII can be established through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). If a plaintiff presents direct evidence of discriminatory intent, then she is entitled to bypass the familiar analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 84 (1973). *Turner v. Kansas City So. Ry. Co.*, 675 F.3d 887, fn 3 (5th Cir. 2012). In such a case, the burden then shifts to the employer to establish, by a preponderance of the evidence, that the same decision would have been made, regardless of the discriminatory intent. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001). Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). It includes "any statement or document which shows on its face that an improper criterion served as a basis-not necessarily the sole basis, but *a* basis-for the adverse employment action. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (emphasis added).

A claim based on circumstantial evidence, on the other hand, is evaluated under the burden-shifting framework that is typically applied in employment discrimination cases. Under the *McDonnell Douglas* analysis, a plaintiff is entitled to a "presumption of discrimination" if she can

meet the "minimal initial burden" of establish[ing] a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Id.* (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W. 3d 629, 633-34 (Tex. 2012); *Turner*, 675 F.3d at 892. Upon a showing of a *prima facie* case, an inference of discrimination is established, and "'the burden shifts to the employer to show a legitimate, nonretaliatory reason'" for the adverse employment action.[4] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (quoting *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011)); *see Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013). If the employer meets its burden, then the burden shifts back to the plaintiff to make an ultimate showing that the employer's proffered reason is pretextual. *Reed*, 701 F.3d at 439; *see Autry*, 704 F.3d at 347; *Black*, 646 F.3d at 259. The plaintiff may also offer evidence to show that the employer's reason, though true, is only one of the reasons for its conduct and that another "motivating factor" is the plaintiff's protected characteristic." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

### Prima Facie Case

#### Direct Evidence

To determine whether comments in the workplace constitute "direct evidence" of discrimination, or only "stray remarks," the court must consider whether the comments are (1) related to the plaintiff's protected characteristics; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment

---

[4] "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black*, 646 F.3d at 259; *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097 (2000). Accordingly, an employer can meet this burden solely by producing evidence that, "if believed by the trier of fact, would support a finding that unlawful [discrimination] was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

decision; and (4) related to the challenged employment decision. *Etienne v. Spanish Lake Truck & Casino Plaza*, L.L.C., 778 F.3d 473, 476 (5th Cir. 2015). The dominant consideration in this analysis is whether the comments show, "without inference or presumption, that [pregnancy] was a basis in employment decisions" in the plaintiff's workplace. *Id.* (quoting *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). "Notably, when the proximity in time of the comments to the challenged employment decision is unclear, [the Fifth Circuit] has found the proximity-in-time factor to be satisfied when the comments were routine, or made over a lengthy period of time." *Id.* (internal quotations omitted).

Here, Plaintiff has pointed to repeated offensive statements, purportedly made by Dr. Gosnell, relating to her pregnancy, which, if believed, are direct evidence that her status is likely to have played a role in AFD's decision to terminate her employment. Sims alleges, in particular, that two days before she informed Dr. Gosnell of her pregnancy, he told the staff that he was going to fire the next woman who became pregnant. (Sims Decl. at 1). She claims that he later stated that he was going to fire her[,]" because she was pregnant. (Response at 11). Plaintiff also said that "almost every day[,]" he told her, explicitly, that he was going to fire her, because she was pregnant. (*Id*. at 4; Sims Depo at 78:9-10). She added that Dr. Gosnell would ask female job applicants if they were "pregnant, sterile, or wearing a chastity belt[,]" and that he would blame any office mistakes on her pregnancy. (Original Petition at 3). "No inference or presumption" is required to conclude from these offensive remarks that her pregnancy was *a* basis in AFD's decision to terminate Plaintiff. *Jones*, 427 F.3d at 993.

With respect to the four factors used to distinguish "direct evidence" from "stray remarks," it is clear that Dr. Gosnell's comments fall into the former category. His remarks explicitly referred

to Sims' pregnancy; they were, ostensibly, made by him, an owner of AFD, who had clear authority over Plaintiff's employment; and they are related to the challenged employment decision, namely, her termination. Plaintiff has not presented any specific evidence of the timing of Dr. Gosnell's remarks, so the proximity-in-time factor is not critical. However, Sims has pointed to several comments, which indicate that Dr. Gosnell's comments "were not isolated or anomalous, but instead were in keeping with a 'routine,' on going practice" of discrimination that she suffered in the workplace. *Etienne*, 7787 F.3d at 476. On this record, Dr. Gosnell's remarks constitute direct evidence of pregnancy discrimination, on Plaintiff's wrongful termination claim.

To prevail on summary judgment, then, Defendant must show that it would have made the same decision absent evidence of discrimination. *Id.* at 477. AFD alleges that Plaintiff was discharged "because of critical comments she had made in the presence of patients about Dr. Gosnell, [AFD], and [AFD's] equipment." (Rodando Affidavit at 3). Defendant emphatically denies that she was terminated due to her pregnancy or sex. (*Id.*). However, AFD must do more than merely articulate a legitimate basis for terminating Sims. It must also show that any reasonable jury would conclude that it would have made the same decision, absent the discrimination. *Fabela*, 329 F.3d at 417-18. Plaintiff has presented her own and other testimony as evidence that she did not make any critical remarks about the company, its dentists, or its equipment. This evidence, viewed in conjunction with the discriminatory animus evinced by Dr. Gosnell's remarks, clearly creates a genuine dispute of material fact regarding Plaintiff's wrongful termination. For these reasons, summary judgment on this claim is denied.

### Circumstantial Evidence

To establish a *prima facie* case of sex or pregnancy discrimination, based on circumstantial

evidence, Sims must show evidence of the following:

    (i)       that she was a member of a protected group;

    (ii)     that she was qualified for the position that she held;

    (iii)    that she "suffered an adverse employment action[;]" and

    (iv)    that a similarly situated employee, who was not a member of Plaintiff's protected class, was treated differently under circumstances "nearly identical" to hers.

*Turner*, 675 F.3d at 892-93; *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003)); *see McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous." *Reed*, 701 F.3d at 439 (citations omitted); *accord Turner*, 675 F.3d at 892. In this case, there is no dispute that Sims, a pregnant woman, is a member of a protected group. *See* 42 U.S.C. § 2000e-2(a), e(k). But, Defendant insists that Plaintiff cannot prove the remaining elements of a *prima facie* case of discrimination based on her pregnancy or sex.

### *Job Qualifications*

At the outset, AFD contends that, after Sims became pregnant, she was no longer able to safely administer nitrous oxide to patients. (Motion at 12; Reply at 4). Defendant insists that that task is "an essential function of [Sims'] job," and so she was not qualified to work as a dental assistant, during her pregnancy. (Motion at 12-13; Reply at 4). AFD has not argued that Plaintiff was unqualified in any other respect.

The "essential functions"[5] of a position include the "fundamental" duties of the job, but not

---

[5]It should be noted that the statutory provision that is relevant to the Title VII job qualification inquiry arises under the Americans with Disabilities Act ["ADA"]. However, the Fifth Circuit has held that, given the similarities in their respective language, purpose, and remedial structure, Title VII and the

those functions that are merely "marginal." 29 C.F.R. 1630.2(n)(1). Work duties *must be necessary and substantially related to* the individual's ability to perform the essential functions of the job. *Herrera v. CTS Corp.*, 183 F.Supp.2d 921, 927 (S.D. Tex. 2002) (emphasis added). Evidence of whether a particular job function is essential may include, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) the amount of time spent on the job performing the function; (3) the consequences of not requiring the individual to perform the function. *Id.* (citing 29 C.F.R. 1630.2(n)(3)). Here, Defendant cites *Appel v. Inspire Pharmaceuticals, Inc.*, 428 Fed.Appx. 279 (5th Cir. 2011), in support for its position that the administration of nitrous oxide was an "essential function" of Plaintiff's job. (Motion at 12). The facts in *Appel*, however, differ significantly from those presented here. Appel was "ordered to remain at home, in bed, for the duration of her pregnancy[.]" *Appel*, 428 Fed.Appx. at 283. As an outside salesperson, obviously a "major component" of her work required "face to face contact" with physicians, as well as time in the office to receive promotional materials, and to sort those materials for distribution. *Id.* The defendant in that case presented persuasive evidence to show that the physical aspects of Appel's position were essential and, that if those tasks could not be completed, sales would decline. *Id.* Besides her own testimony, Appel did not produce any evidence to refute the defendant's claim that the physical requirements of her job were essential to its proper performance. *Id.* at 283-84. For that reason, the court found that she had not raised a genuine issue of fact on that matter, and, ultimately, held that she was not qualified for her position. *Id.* at 284.

In contrast, the only dispute in this case, is whether Plaintiff's inability to safely monitor and

ADA should be interpreted consistently. *See Flowers v. Southern Regional Physician Services Inc.*, 247 F.3d 229, 233-34 (5th Cir. 2001). For these reasons, the court will apply the legal standards developed by federal courts, in Title VII *and* ADA cases, to resolve the issue of whether Plaintiff was qualified for her position, under Title VII.

14

administer nitrous oxide sedation to patients, rendered her unqualified to work as a dental assistant. Sims concedes that she should not have been treating patients who required sedation, during her pregnancy. (Sims Depo. at 17:22-18:10). However, she insists that the administration of nitrous oxide is not an "essential function" of her job as a dental assistant, as only about twenty percent of AFD's patients required that treatment. (Response at 7). Plaintiff has presented testimony from Kasie Wilkerson, another dental assistant, who stated that, on a typical day, AFD performed procedures requiring nitrous oxide treatment, on only two, of its ten, patients.(*See* Wilkerson Affidavit at 2). She testified further that she could have "eas[ily] [] handle[d] all of the [] patients [who required nitrous oxide sedation,] and [allow Plaintiff] to handle the patients [who did] not [require treatment with] nitrous [oxide]." (*Id.*). Sims testified that her job primarily consisted of performing administrative work, and assisting dentists with minor procedures, not requiring sedation. (*See* Response at 12; Sims Depo. at 27:10-28:11). Plaintiff alleges further that AFD knew that she was not certified to administer nitrous oxide to patients, at the time that she was hired.[6] (Surreply at 1, 3). Sims insists that this evidence is proof that administering nitrous oxide to patients was not an essential function of her position.

Although Defendant counters that administering nitrous oxide was essential to Plaintiff's job, it has not presented any additional evidence to counter Sims' claim. Sims has provided third party testimony which shows that such treatment constituted only a small percentage of her work, and that foregoing that function would have had minor consequences for the operation of AFD's office, overall. *See* 29 C.F.R. 1630.2(n)(3). On this record, Sims has made the "minimal showing

---

[6]She was hired on December 19, 2008. (Original Petition at 3; Gosnell Decl. at 2). She has submitted a certificate showing that she became licensed to administer nitrous oxide for the purposes of conscious sedation, on February 27, 2009.(Response at Ex. 3).

necessary" to conclude that she may have been qualified for the position of dental assistant, during her pregnancy. *Jimenez v. DynCorp Intern., LLC*, 635 F.Supp.2d 592, 604 (W.D. Tex. 2009) (citing *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (1999). For these reasons, summary judgment on this issue is improper.

***Adverse Employment Action***

A Title VII plaintiff must also prove that she was subject to an "adverse employment action," which is a judicially-coined term referring to an employment decision that affects the terms and conditions of employment. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). "Adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

Plaintiff complains that her transfer from dental assistant to hygienist assistant was an adverse employment action, because the hygienist assistant position was less prestigious. (Response at 10). Sims insists that the transfer was, in essence, a demotion. (*Id.*). Defendant, on the other hand, contends that the move was a reassignment, that was taken as a safety precaution, to minimize Sims' exposure to nitrous oxide, during her pregnancy. (Motion at 13; Reply at 4). AFD argues further that Plaintiff's subjective characterization of the reassignment as a "demotion" is insufficient to prove it as such. (Motion at 13; Reply at 5). The company emphasizes, as well, that the transfer was temporary, and that Sims' salary was not reduced. (Motion at 13; Reply at 4-5).

To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade.

*Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007). A transfer can be deemed a demotion if the new position "proves objectively worse –such as being less prestigious[,] less interesting, or providing less room for advancement." *Id.* at 613. Whether the new position is worse is an objective inquiry. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). A number of factors may be considered in determining whether a position is objectively worse, including whether the previous position provides higher compensation or other tangible benefits; greater responsibility or more desirable job duties; more opportunities for career advancement; requires greater skills, education, or experience; is obtained through a complex selection process, or is otherwise objectively more prestigious. *Rahm v. Thermo Fisher Scientific Inc.*, No. H-07-cv-02688, 2009 WL 6767072, at *7 (S.D. Tex. May 11, 2009) (citing *Alvarado*, 492 F.3d at 614).

The court agrees that a plaintiff's subjective perception that a demotion has occurred is not sufficient. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2001). However, in this case, there is sufficient evidence to raise a genuine issue of material fact on whether Sims' reassignment was an adverse employment action. According to her, the transfer to hygienist assistant was a demotion, because the position of hygienist assistant is "less prestigious than [that of a] dental assistant[,]" and "it was demeaning to go from assisting [a dentist] to assisting a hygienist." (Response at 10). In support of her claims, Plaintiff has submitted certificates from the Texas State Board of Dental Examiners, to show that she is a Registered Dental Assistant, and that she is licensed to administer nitrous oxide for the purpose of conscious sedation. (Response at Ex. 2, Ex. 3). She also claims that the positions involve some differences in job responsibilities. (*See* Response at 10; Sims Depo. at 29:1-7, 23-25). She notes that hygienists "just [] clean[] teeth[,]" while "[dental] assistant[s] [help] in procedures [] like remov[ing] sutures or tak[ing] impressions."

(Response at 10; Sims Depo. at 29:1-7). Sims likewise points to testimony from Wilkerson, who states, that being transferred from a "[dentist's] assistant to [] a hygienist assistant would be offensive." (Wilkerson Affidavit at 1). In addition, it is unclear from the record whether Sims did, in fact, suffer a decrease in compensation, because of the transfer. (*See* Response at 10 ["... ultimately there was no pay reduction.") *cf* (Response at 12 ["[Sims] would get a pay cut to $12.00 if she is a hygienist only."]). In either case, it is clear that she is not relying on a mere loss of subjective prestige, or an idiosyncratic preference for being a dental assistant. (*See id.* at 10) *cf Rahm*, 2009 WL 6767072, at *8 (noting that the plaintiff's reference to the prestige of her former position "reflect[ed] nothing more than her personal preference to [maintain] [] that [job]."). Because Sims has produced objective evidence that indicates that her reassignment to the position of hygienist assistant may have been a demotion, summary judgment on this point must be denied.

### *Similarly Situated Employee*

"[F]or employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'" *Brown v. Board of Trustees Sealy Independent School Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012). Although the Fifth Circuit has made clear that "nearly identical" is "not synonymous with 'identical[,]'" courts in this circuit have defined "'similarly situated' narrowly." *Brown*, 871 F.Supp.2d at 593. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor [,] or had their employment status determined by the same person, and have essentially comparable [disciplinary] histories." *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (internal quotations omitted). In *Lee v. Kansas City Southern Ry. Co.*, the Fifth Circuit held that

"[e]mployees with different supervisors, who work for different divisions of a company [] generally will not be deemed similarly situated." *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)). The court has also stated, "[l]ikewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id*. at 259-60 (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)). The *Lee* court concluded that, if "the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not 'similarly situated' for purposes of an employment discrimination analysis." 574 F.3d at 260.

Defendant claims that Sims cannot identify any male employee who has been treated more favorably than she, because it has no male employees. (Motion at 11). However, the law in this circuit is clear that, on a claim for pregnancy discrimination, comparators need not be male; instead, a valid comparator may be either a male, or a non-pregnant female. *Gerdin,* 908 F.Supp.2d at 827 (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1060 (5th Cir. 1998) ("comparison is . . . between pregnant and nonpregnant workers, not between men and women"). In that regard, AFD also argues that Sims cannot establish that "she was replaced by[,] [ ]or treated less favorably [ ] than [a] similarly situated employee." (Motion at 11).

To establish her prima facie case of discrimination, Sims alleges that Kasie Wilkerson, a non-pregnant dental assistant at AFD, was treated more favorably than she.[7] (Response at 11). Sims and Wilkerson both worked at AFD's Tomball office, under Dr. Gosnell.(Wilkerson Affidavit at 1-2). They likely shared job responsibilities, given that Wilkerson claims that she and Plaintiff could

---

[7]Plaintiff's pleadings focus primarily on Dr. Gosnell's alleged verbal misconduct. For example, she claims that Dr. Gosnell was "rude" and "short" with her, but that he did not treat Wilkerson similarly. (Response at 11).

have "easily" treated each other's patients. (*Id*. at 2). Although Sims concedes that no one replaced her as a dental assistant, her duties were delegated to an employee who was not pregnant. *McLaughlin v. W & T Offshore, Inc*., 78 Fed. Appx. 334, 338 (5th Cir. 2003) (finding that plaintiff had been replaced by person outside of her protected class, thus establishing *prima facie* case of discrimination). It appears, then, that Sims and Wilkerson were similarly situated for the purposes of her demotion claim.

### *Legitimate Non-Discriminatory Reasons for Employment Action & Pretext*

Defendant's burden, here, "is one of production, not persuasion; 'it can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 207 (1981)). Although the burden appears to shift between the employee and the employer throughout the litigation, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains[,] at all times[,] with the plaintiff." *Id.* (citations omitted). In satisfying this burden, a plaintiff must be given the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons proffered by the defendant were not its true reasons, but, instead, were a pretext for discrimination. *Id.* The plaintiff must present evidence rebutting *each* of the legitimate nondiscriminatory reasons articulated by the defendant. *Wallace v.*, 271 F.3d at 222.

AFD maintains that it transferred Plaintiff to the position of hygienist assistant to minimize her exposure to nitrous oxide, because of the elevated risk of miscarriage that the gas poses to pregnant women. (Motion at 14, Reply at 6). Defendant adds that hygienists work in treatment rooms that are separate from those in which nitrous oxide is administered, and that hygienist rarely, if ever, use the substance. (Motion at 14). AFD emphasizes that the reassignment was temporary, and that her salary was not disturbed. (*Id*. at 14; Reply at 6).

Sims counters these assertions by claiming that, after she informed Defendant of her pregnancy, her pay and her hours were cut. (Response at 12). She also alleges that, during their pregnancies, two hygienists were allowed to work in rooms in which nitrous oxide was administered, but that she was not allowed to do so. (*Id*. at 13). Plaintiff contends further that, although she acknowledges the safety risks that are posed to pregnant women by exposure to nitrous oxide, she believes that she should not have been reassigned to the position of hygienist assistant. (Surreply at 6).

Plaintiff has raised several fact issues to rebut AFD's proffered legitimate nondiscriminatory reason for her transfer. While Defendant claims that hygienists are rarely exposed to nitrous, Sims points out that two hygienists were permitted to work around nitrous oxide during their pregnancies. (Reply at 6, Surreply at 6). If Plaintiff's allegations are found to be true, then AFD's justification for transferring her has scant weight. Moreover, Defendant claims that Sims' pay did not suffer as a result of the reassignment, but she contends that she did lose wages and hours. (Motion at 11, Reply at 6; Response at 12). In fact, Plaintiff alleges that Dr. Gosnell told her, expressly, that she would be "demoted." (Response at 12; Original Petition at 3). Because genuine issues of material fact remain, summary judgment is improper, on this record.

***Defendant's Objections to Plaintiff's Evidence***

Defendant has also filed a motion objecting to certain evidence that Plaintiff has attached to her Response. Plaintiff has responded and Defendant has replied. The court has considered the arguments presented by both parties, and has only considered those exhibits which constitute competent summary judgment evidence. FED. R. CIV. P. 56(c); *Pegram v. Honeywell, Inc*., 361 F.3d 272, 285 (5th Cir. 2004) ("[T]he admissibility of summary judgment evidence is subject to the same

rules of admissibility [that are] applicable at trial.")

In sum, Plaintiff has established a *prima facie* of sex and pregnancy discrimination based on her termination and demotion. Although Defendant has offered legitimate nondiscriminatory reasons for its employment action, Plaintiff has presented evidence rebutting those justifications. For these reasons, Defendant's motion for summary judgment is denied.

**Conclusion**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment is **DENIED**.

**SIGNED** at Houston, Texas, this 19th day of April, 2017.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**